UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


DERRICK GREGORY JAMES,

                    Plaintiff,

v.                                        Case No. 3:09-cv-915-J-34JRK


OFFICER D. ADAMS, etc.;
et al.,

                    Defendants.

———————————————————————

**ORDER**

**I. Status**

    Plaintiff Derrick Gregory James, an inmate of the Florida penal system proceeding pro se and in forma pauperis, initiated this action by filing a Civil Rights Complaint Form (Complaint) (Doc. #1) with exhibits (P. Ex.) under 42 U.S.C. § 1983 on August 21, 2009, pursuant to the mailbox rule.  In the Complaint, Plaintiff names the following individuals as Defendants: (1) Officer D. Adams, a recreation officer at Florida State Prison (FSP); (2) D. Worthington, the Warden of FSP; (3) John Doe One, a recreation officer/CO1 at FSP; and (4) John Doe Two, a recreation officer/CO1 at FSP.  Plaintiff claims that the Defendants violated his constitutional rights by denying him recreation on three occasions, as retaliation for his filing of grievances.  As relief,

Plaintiff requests the following: (1) discovery to identify John Does One and Two; (2) an injunction enjoining FSP officials from denying recreational privileges without just cause to close management (CM) inmates; and (3) compensatory and punitive damages against the Defendants in their official and individual capacities. Complaint at 10.

This cause is before the Court on Defendants Adams and Worthington's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Summary Judgment Motion) (Doc. #17) with exhibits (Def. Ex.). Since Plaintiff is appearing <u>pro se</u>, the Court advised him of the provisions of Fed. R. Civ. P. 56 and gave him an opportunity to respond to the motion. <u>See</u> Order of Special Appointment; Service of Process Upon Defendants; Notice to Plaintiff (Doc. #6) (setting forth the provisions of Rule 56 of the Federal Rules of Civil Procedure), filed October 22, 2009; Order (Doc. #19), filed May 28, 2010. On September 3, 2010, Plaintiff filed an opposition to Defendants' Summary Judgment Motion. <u>See</u> Response to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Response) (Doc. #23). This case is now ripe for review.

## II.  Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Crawford v. Carroll</u>, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and <u>Wilson v. B/E/Aerospace, Inc.</u>, 376 F.3d 1079, 1085 (11th Cir. 2004)).

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." <u>Allen v. Bd. of Pub. Educ. for Bibb County</u>, 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).

> "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. 2548).[1]

<u>Id</u>. at 1314.

### III. Plaintiff's Allegations and Claims

Plaintiff claims that Defendants Adams, John Doe One and John Doe Two violated his First and Fourteenth Amendment rights by retaliating against him for his filing of grievances.  Complaint at 8.  He states that Defendant Worthington, as the Warden at FSP, failed to properly train and supervise his employees, and thus, failed to prevent the acts of retaliation.

---

[1] <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

- 3 -

Plaintiff alleges that, on July 28, 2009, a correctional officer "passed up" about one dozen or more prisoners, including Plaintiff, for recreation. He notes that the recreation officers do not want to "pull [the inmates] out of their assigned cells to go to the recreational yard due to [the officers'] laziness." Id. When Plaintiff was refused recreation, he told the recreation officers that he intended to inform Tallahassee of their continuing behavior of refusing recreation to the inmates. Id. On that same day, Plaintiff prepared a complaint that nearly two dozen K dormitory prisoners signed. Id.

The following week, on August 3, 2009, as retaliation for Plaintiff's statement made the week before and for Plaintiff's forwarding (via the grievance box) the signed complaint to the Office of the Secretary, Defendant Adams, a recreation officer, refused to allow Plaintiff to go to the recreational yard. Id. at 9. That same day, Plaintiff filed a Grievance of Reprisal to the FSP Warden, stating that Adams had retaliated against Plaintiff by denying him access to the recreational yard. Id.; P. Ex. 1. That grievance was denied without action on August 7th. Id.; P. Ex. 8. On August 11, 2009, Plaintiff filed a Grievance of Reprisal directly to the Office of the Secretary, which was denied on August 20th. Complaint at 9; P. Exs. 2; 9.

The next week, on August 11, 2009, a recreation officer (John Doe One) refused recreation to Plaintiff after Plaintiff had been

placed on the recreation list by the Sergeant in K dormitory. Complaint at 9. That recreation officer stated that Plaintiff "had pissed off the Warden by filing that Complaint." <u>Id</u>. Plaintiff filed a Grievance of Reprisal directly to the Office of the Secretary, which was denied without action on August 18th. <u>Id</u>.; P. Exs. 3; 10.

On August 17, 2009, Plaintiff was placed on the recreation list by the Sergeant in K dormitory. Complaint at 9. Again, as Plaintiff was waiting to be taken from his assigned cell by one of several recreation officers, Plaintiff was told:  "You're the one that has been filing all those grievances." <u>Id</u>. That recreation officer (John Doe Two), described as wearing a hat or cap and having tattoos, passed Plaintiff's cell and did not unlock the cell door to allow him to go to recreation.  <u>Id</u>. Plaintiff, that same day, filed a Grievance of Reprisal directly to the Office of the Secretary, which was returned without action on August 24, 2009. <u>Id</u>.; P. Exs. 4; 11.

### IV. Defendants' Motion for Summary Judgment

Defendants Adams and Worthington have filed a Motion for Summary Judgment (Doc. #17), in which they contend that there are no genuine issues of material fact, and therefore they are entitled to judgment as a matter of law.  Specifically, Defendant Adams contends that Plaintiff James has failed to show a causal connection between James' protected conduct and Defendant Adams'

denying him recreation on August 3, 2009.  Motion for Summary Judgment at 6-11.  Defendant Worthington, noting that he never held the position of Assistant Warden or Warden of FSP and never had any supervisory responsibilities or involvement with recreation activities, claims that Plaintiff improperly included him as a Defendant and therefore he should be dismissed from the action. Id. at 15.  With respect to Defendants John Does One and Two, Defendants argue that Plaintiff's claims against the unnamed recreation officers should be dismissed for Plaintiff's failure to exhaust and for Plaintiff's failure to specifically identify those recreation officers.  Id. at 12-15.

### V. Law and Conclusions

### A. Retaliation Claim

First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment.  Moulds v. Bullard, 345 Fed.Appx. 387, 393 (11th Cir. 2009) (quotations and citation omitted) (not selected for publication in the Federal Reporter).  The Eleventh Circuit has stated that a plaintiff must establish three elements to state a retaliation claim.

> "To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that

- 6 -

> there is a causal connection between the
> retaliatory actions and the adverse effect on
> speech." <u>Bennett v. Hendrix</u>, 423 F.3d 1247,
> 1250 (11th Cir. 2005). [Plaintiff's] complaint
> must contain enough facts to state a claim of
> retaliation by prison officials that is
> "plausible on its face." <u>Bell Atl. Corp. v.
> Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1974,
> 167 L.Ed.2d 929 (2007).

<u>Douglas v. Yates</u>, 535 F.3d 1316, 1321 (11th Cir. 2008).  With

respect to the third prong, the inmate must show a causal

connection between his protected conduct and the prison official's

action.  <u>Jemison v. Wise</u>, No. 09-15997, 2010 WL 2929692, at *4

(11th Cir. July 28, 2010) (citation omitted) (not selected for

publication in the Federal Reporter).  "In other words, the

prisoner must show that, as a subjective matter, a motivation for

the defendant's adverse action was the prisoner's grievance or

lawsuit."  <u>Id</u>. (citation omitted).

Defendants acknowledge that writing grievances is

constitutionally protected speech under the First Amendment, and

thus Plaintiff has met his burden as to the first element since he

has a First Amendment right to file grievances.  Plaintiff claims

that, because he filed a complaint[2] regarding the denial of

recreation on July 28, 2009, which was signed by approximately two

dozen prisoners, Defendant Adams denied him recreation privileges

on August 3, 2009.  The record reflects that following facts.

---

[2] <u>See</u> Response, P. Ex. A, "Urgent Complaint" to Walter McNeil,
dated July 28, 2009.

Defendant Adams, in his Affidavit, explained the procedures for removing inmates from their cells for escorting to the recreational areas.

> As a Recreation Officer[,] my duties include removing inmates from their cells and escorting and supervising them while they are in the recreation areas.  The dormitory wing Officers are responsible for providing the Recreation Officers with a list of inmates who wish to participate in recreation on any particular day.  Once the Recreation Officer arrives on the dormitory wing, the dormitory Officer provides us with the recreation list which contains the names of the inmates who wish to go to recreation and who have been approved to attend.  If an inmate's name is not on the list, we do not pull the inmate out of the cell.  On occasion, the inmate's name appears on the recreation list but the inmate changes his mind and refuses to come out of his cell to participate in recreation.  In that instance[,] I will note on the Daily Record of Special Housing, DC6-229, "refused yard."  **I also notate, "refused yard" on the DC6-229 if the inmate's name was not on the recreation list.**

Def. Ex. D, Affidavit of David Adams (emphasis added).

On August 3, 2009, Defendant Adams did not remove James from his cell for recreation because James' name was not on the recreation list that had been prepared by the dormitory officer.

<u>Id</u>.  Defendant Adams described the events of that day:

> On August 3, 2009, I notated on the Daily Record of Special Housing, DC6-229, that inmate James refused recreation.  (Exhibit C, p. 18)  I recall this incident because as I passed by inmate James' cell he asked why he wasn't being taken to recreation.  **I showed inmate James the recreation list and informed [him] that his name was not on the list.**

> Inmate James then asked me for my name.  It
> appears as though inmate James knew that he
> was not on the recreation list because he was
> not standing ready at his cell door to be
> pulled for recreation.  When the Recreation
> Officers pull the inmates they are to be
> stripped to their boxer shorts and standing by
> the cell door.  Inmate James was not standing
> by the cell door ready to be pulled for
> recreation. . . . It is inmate James'
> responsibility to have his name placed on the
> recreation list by the dormitory Officer prior
> to the Recreation Officer's arrival.

Id. (emphasis added).  The next two days, James attended recreation

for two hours each day.  Def. Exs. D; C, Daily Record of Special

Housing, at 18.[3]

As explained by Defendant Adams, it is James' responsibility

to request that the dormitory officer place his name on the

recreation list, and it is the duty of the dormitory officer to

create the recreation list identifying the inmates that have been

approved to attend recreation on a particular date.  Defendant

Adams, the recreation officer that day, was merely responsible for

taking only those inmates who were on the recreation list.  And,

thus, because James' name did not appear on that list on August 3,

2009, Defendant Adams notated on the Daily Record of Special

Housing (Def. Ex. C at 18) that James had refused recreation.  The

records also reflect that James had refused to attend recreation

several times prior to August 3, 2009.  Id. at 1-17.

---

[3] The Daily Records of Special Housing are used to document
the activities of an inmate housed in a special housing assignment.
Def. Ex. D, Affidavit of David Adams.

As previously stated, Plaintiff must show a causal connection between his protected conduct and Adams' alleged retaliatory act (the August 3, 2009 denial of recreation).  Based on the record, James has failed to demonstrate any causal link between Defendant Adams' August 3, 2009 conduct and James' July 28, 2009 complaint about recreation to a Tallahassee office.  Defendant Adams stated:

> I have never refused inmate James recreation privileges, nor did I retaliate against him for complaining about recreation privileges.  On August 3, 2009, I had no knowledge that inmate James had previously complained about recreation privileges.  As inmate James's Daily Records of Special Housing demonstrate, inmate James has refused recreation privileges on several occasions between the months of May and September 2009. (Exhibit C, p. 1, 3, 5, 7, 9, 11, 13, 15, 17, 18, 23, 25, 27, 29, & 31)

Def. Ex. D.

This Court finds Defendant Adams has met his initial burden of showing, by reference to his Affidavit and other inmate records, that there are no genuine issues of material fact that should be decided at trial.  Because Defendant has met this initial burden, Plaintiff is required to present his own documentation (affidavits, depositions, answers to interrogatories, admissions on file, etc.) to show that there is a genuine issue for trial.  Plaintiff has failed to present this Court with any relevant evidence, other than his own statement in his sworn Affidavit (Response, P. Ex. D, Sworn Affidavit), which simply reiterates the allegations in his Complaint.

- 10 -

The United States Supreme Court stated:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

Here, James has not come forward with evidence from which a jury could find that Defendant Adams was subjectively motivated to punish James for filing a complaint with Tallahassee. Rather, the record reflects that Defendant Adams denied James recreation on that one day because James' name was not on the recreation list. Neither James' affidavit nor his exhibits contradict this assertion. Moreover, James has identified no evidence to create a

triable issue as to Defendant Adams' sworn lack of knowledge of the prior complaint.  Thus, this Court concludes that no reasonable jury could believe that Defendant Adams retaliated against Plaintiff.  Thus, summary judgment in Defendant Adams' favor is appropriate.

## B. Defendant Worthington

In the Complaint, Plaintiff claims that Defendant Worthington, as the Warden at FSP, failed to properly train and supervise his employees, and thus failed to prevent the acts of retaliation. However, since the Defendants have now pointed out that Worthington was never the Warden at FSP, <u>see</u> Motion for Summary Judgment at 15-16, Plaintiff "agrees that Defendant Worthington was not and never has been the Warden at FSP, and therefore, should be removed from this [s]uit as a Defendant." Response at 8.  Since Worthington has never held the position of Warden and, in his position as Operations Analyst, does not have any supervisory responsibilities over correctional recreation officers or involvement with recreation activities, <u>see</u> Def. Ex. A, Affidavit of Worthington, the parties' requests to dismiss Defendant Worthington will be granted, and Defendant Worthington will be dismissed without prejudice.

On April 26, 1996, the President signed into law the Prison Litigation Reform Act (PLRA), which amended The Civil Rights of

Institutionalized Persons Act, 42 U.S.C. § 1997e to read as follows:

> (a) Applicability of Administrative Remedies. No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Thus, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d at 1374; Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). Furthermore, "the exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile." Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (citing Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998)).

Plaintiff's request (see Response at 8-9) to add the Warden of FSP (who served during the relevant time period from July 28, 2009, through August 17, 2009) as a Defendant will be denied without prejudice. Plaintiff has failed to exhaust his available administrative grievance remedies, as required by the PLRA, with respect to his claim that the FSP Warden failed to properly train

and supervise his employees, and thus failed to prevent the acts of retaliation on August 3, 11, and 17, 2009.[4]   After properly exhausting his claim as to the FSP Warden and identifying that Warden by name, Plaintiff may initiate a new civil rights action by completing and filing the enclosed civil rights complaint form.

### C. John Does One and Two

Plaintiff further claims that two recreation officers, on August 11th and 17th, refused recreation to Plaintiff after Plaintiff had been placed on the recreation list by the Sergeant in K dormitory.  These two unnamed recreation officers allegedly made statements referring to Plaintiff's filing of the July 28, 2009 complaint and grievances concerning the denial of recreation to CM inmates.

Plaintiff requests additional time to conduct discovery to identify the two unnamed recreation officers.  Complaint at 10. However, Defendants argue that, even if Plaintiff were to be

---

[4] In responding to Defendants' summary judgment motion, Plaintiff asserts that there is "a continued pattern of recreational violation against FSP CM prisoners" in that the recreational officers create "illegal recreational rules" as a means to refuse recreation to the inmates if they fail to abide by the rules.  Response at 9; P. Ex. G.  Specifically, Plaintiff alleges that recreation officers, on December 21 and 22, 2009, and again on February 2 and 4, 2010, refused recreation to those prisoners who were not dressed properly for recreation.  Response at 9.  To exhaust, Plaintiff filed grievances to the Warden and the Secretary regarding those alleged violations.  P. Ex. G.  However, those grievances did not address the alleged August 3, 11, and 17, 2009 acts of retaliation presumably resulting from the Warden's failure to properly train and supervise those employees involved.

granted additional time to conduct discovery to identify the two John Does,[5] Plaintiff has failed to exhaust his available administrative grievance remedies, as required by the PLRA.  <u>See</u> Motion for Summary Judgment at 12-15.

James submitted grievances of reprisal directly to the Secretary of the Florida Department of Corrections to address the alleged August 11 and 17, 2009 acts of retaliation.  <u>See</u> Def. Exs. B8; B10.  However, the Department did not accept those grievances as "grievances of reprisal" and denied them without any action on the merits.  <u>See</u> Def. Exs. B9; B11.  The Secretary's representative informed James that "[t]he institution should be given the opportunity to respond to [the] issue" and therefore, he should submit the grievances at the institutional level.  <u>Id</u>.  Thus, it is evident that James has not properly exhausted the issues concerning the alleged retaliation by the unnamed officers prior to filing this action.  <u>See</u> Def. Ex. B1, Affidavit of Rebecca Padgham, Management Analyst I, Florida Department of Corrections, Bureau of Inmate Grievance Appeals, paragraphs 6, 7, 9.

The administrative grievance procedure is still available to Plaintiff James to grieve the issues, and James has the opportunity to show good cause for any tardiness.  <u>See</u> <u>Schlicher v. Fla. Dep't</u>

---

[5] Plaintiff's request for additional time to conduct discovery to identify the two John Does will be denied without prejudice to Plaintiff's right to refile after he has properly exhausted those issues.

<u>of Corr.</u>, No. 09-16272, 2010 WL 3933384, at *1 (11th Cir. Oct. 8, 2010); <u>Bryant v. Rich</u>, 530 F.3d at 1373 (recognizing that grievance procedures provide inmates with the opportunity to request consideration of untimely grievances for good cause). Thus, these claims (concerning the alleged retaliation on August 11, 2009, and August 17, 2009) are due to be dismissed without prejudice for Plaintiff's failure to properly exhaust the available administrative remedies. In initiating the administrative grievance procedure with respect to these issues, Plaintiff should grieve at the institutional level in compliance with the Rules of the Florida Department of Corrections. <u>See</u> Def. Exs. B9; B11; Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure.

### D.  42 U.S.C. § 1997e(e)

In his Complaint, Plaintiff requests compensatory and punitive damages. Complaint at 10. Defendants contend that Plaintiff has not suffered an injury sufficient to withstand 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

> "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than <u>de minimis</u>." <u>Mitchell v. Brown & Williamson</u>

> Tobacco Corp., 294 F.3d 1309, 1312-13 (11th
> Cir. 2002) (citation omitted). We have
> previously held that a forced "dry shave" only
> amounted to a <u>de</u> <u>minimis</u> injury. <u>Harris v.</u>
> <u>Garner</u>, 190 F.3d 1279, 1286-87 (11th Cir.
> 1999), <u>vacated</u>, 197 F.3d 1059, <u>reinstated</u> <u>in</u>
> <u>relevant</u> <u>part</u>, 216 F.3d 970, 972 (11th Cir.
> 2000) (<u>en banc</u>); <u>see</u> <u>also</u> <u>Nolin v. Isbell</u>, 207
> F.3d 1253, 1258 n. 4 (11th Cir. 2000) (bruises
> received during an arrest were non-actionable
> <u>de</u> <u>minimis</u> injury). Even though § 1997e(e)
> bars damages for mental or emotional injury,
> it does not affect the availability of
> declaratory or injunctive relief. <u>See</u> <u>Harris</u>,
> 190 F.3d at 1288.

<u>Mann v. McNeil</u>, 360 Fed.Appx. 31, 32 (11th Cir. 2010), <u>cert</u>.

<u>denied</u>, 2010 WL 3393377 (U.S. Nov. 1, 2010) (No. 10-6111).

In this case, Plaintiff did not suffer any physical injury,
and he is seeking both compensatory and punitive damages for mental
or emotional harm. Thus, pursuant to 42 U.S.C. § 1997e(e),
Plaintiff's requests for compensatory and punitive damages are
barred.

## E. Injunctive Relief

Plaintiff requests that this Court issue an injunction
enjoining FSP officials from denying recreation privileges without
just cause to CM prisoners. Plaintiff's request for injunctive
relief on behalf of CM prisoners housed at FSP is improperly before
this Court. Plaintiff cannot represent the interests of other
inmates; they may initiate their own separate civil rights actions
and seek relief. Furthermore, Plaintiff James is no longer housed
at FSP, <u>see</u> http://www.dc.state.fl.us/ActiveInmates (website for

the Florida Department of Corrections), and therefore, his request for injunctive relief will be denied as moot since it appears that there is no present injury or real and immediate threat of future injury. See Rowan v. Harris, 316 Fed.Appx. 836, 838 (11th Cir. 2008) (citations and quotations omitted), cert. denied, 129 S.Ct. 500 (2008).

Accordingly, for all of the above-stated reasons, Defendants Adams and Worthington's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. #17) will be granted.

Therefore, it is now

**ORDERED**:

1.   The parties' requests to dismiss Defendant David Worthington is **GRANTED,** and Defendant Worthington is **DISMISSED** without prejudice from this action.

2.   Plaintiff's request for injunctive relief (to enjoin FSP officials from denying recreation privileges without just cause to CM prisoners) is **DENIED as moot**.

3.   Plaintiff's request to add the Warden of FSP as a Defendant is **DENIED** without prejudice to Plaintiff's right to refile after he has properly exhausted and identified the Warden.

4.   Plaintiff's request for additional time to conduct discovery to identify John Does One and Two is **DENIED** without prejudice to Plaintiff's right to refile after he has properly exhausted the issues.

5.    The claims concerning the alleged retaliation on August 11, 2009, and August 17, 2009 are **DISMISSED** without prejudice for Plaintiff's failure to properly exhaust the available administrative remedies at the institutional level.

6.    Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. #17) is **GRANTED**.

7.    The Clerk shall enter final judgment in favor of Defendant Adams.

8.    The Clerk shall close this case.

9.    The Clerk shall send a civil rights complaint form to Plaintiff.

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of December, 2010.

MARCIA MORALES HOWARD
United States District Judge

sc 12/13
c:
Derrick G. James
Counsel of Record

- 19 -